IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03429-KLM

ANTHONY R. MURPHY,

    Applicant,

v.

MS. PLOUGHE, and
JOHN SUTHERS, the Attorney General of the State of Colorado,

    Respondents.

## ORDER TO DISMISS IN PART AND TO ANSWER

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This case is before this Court pursuant to the Order of Reference entered March 8, 2015, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge [##16, 18][1].

    Applicant, Anthony R. Murphy, a state prisoner in the custody of the Colorado Department of Corrections, currently is incarcerated at the Arrowhead Correctional Center in Canon City, Colorado.  Applicant initiated this action by filing *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, in which he challenges the validity of his conviction and sentence in Jefferson County District Court Case No. 09CR2523.

    On January 6, 2015, Magistrate Judge Gordon P. Gallagher directed Respondents to file a Pre-Answer Response addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A).

---

[1] "[#16]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Order.

Respondents submitted a Pre-Answer Response on February 9, 2015 (ECF No. 11). Applicant filed a Reply on March 23, 2015 (ECF No. 12).

The Court must construe the Application liberally because Applicant is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court does not "assume the role of advocate for the *pro se* litigant." *See Hall*, 935 F.2d at 1110. For the reasons stated below, the Court will dismiss the habeas corpus action in part and order a substantive answer for the remaining exhausted claims.

### A. Relevant Factual and Procedural History

Evidence at trial established that a confidential police informant called a man he knew as a drug dealer and asked to buy cocaine. The dealer told the informant where to meet his deliveryman. The dealer described that person and the car he would be driving. Applicant, who met the description given by the dealer, arrived at the designated location in a car that matched the dealer's description. The informant entered the car. Before any drugs or money exchanged hands, police surrounded the car and arrested Applicant. Twelve grams of crack cocaine, subdivided into twenty-seven individual packets, were found inside the car in the driver's side door pocket and on the floor in front of the driver's seat. All of the packets appeared to be roughly the same weight.

On March 8, 2010, Mr. Murphy proceeded to trial on one charge: possession with intent to distribute a schedule II controlled substance, with a prior conviction. After a two day trial, the jury found Applicant guilty; he later was sentenced to 16 years imprisonment. Applicant filed a direct appeal to the Colorado Court of Appeals (CCA) raising three claims (#11-5). The CCA affirmed his conviction in *People v. Murphy,* (Colo. App. No. 10CA1552,

May 10, 2012) (unpublished) (Murphy I) (#11-9). He filed a petition for certiorari in the Colorado Supreme Court (CSC) (#11-7), which was denied by that court on September 17, 2012 (#11-6).

On November 30, 2011, Mr. Murphy filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure, which was denied without a hearing. Applicant appealed and on March 13, 2014, the CCA affirmed the lower court. *People v. Murphy* (Colo. App. No. 13CA0233, March 13, 2014) (unpublished) (Murphy II) (#11-4). Applicant's petition for certiorari was denied by the CSC on November 24, 2014 (#11-2).

Applicant filed the instant action on December 19, 2014 wherein he raises the following claims, as reorganized by Respondents in their Answer.

1. Ineffective assistance of trial counsel (IAC), in that trial counsel failed to obtain or introduce evidence in support of applicant's "alternate theory" that he happened to be at the Walmart, and happened to get into the dealer's car after the dealer exited but just before the bust. Such defense evidence included:

    a. evidence that two officers who searched the car and applicant's person did not find drugs;

    b. surveillance tapes of the Walmart parking lot in which the drug transaction took place;

    c. applicant's bank statements (as evidence of an innocent source of cash found on his person at arrest); and

2. IAC in that counsel failed to object, on hearsay grounds, to unspecified statements by:

    a. the CI who pretended to be the drug buyer; and

    b. at least one detective;

3. Due process violations, in that the prosecution:

    a. knowingly presented false testimony of the CI and officers involved in the bust and subsequent searches;

  b.  withheld exculpatory evidence, *e.g.*, Walmart surveillance tapes, recordings of the transaction and officer interactions;

  c.  prosecuted applicant "maliciously";

4. Fourth amendment violations, in that:

  a.  the reliability of the informant who provided information for the affidavit for applicant's warrantless arrest is unknown, as is the source of his or her information;

  b.  the affidavit does not describe a specific person and car to be searched, and does not include a nexus between applicant and the searched car;

  c.  the affidavit contains information known by the affiant to be false;

5. Violations of the Confrontation Clause, via the admission of hearsay from detective Jungclaus, the CI and the dealer; and

6. A due process violation in the court's failure to sustain a for-cause challenge to Juror K.

## B. Procedural Requirements for Federal Habeas Corpus Review

Before this Court can address the merits of Applicant's claims, it is necessary to examine whether this Application fulfills the applicable procedural requirements under the federal habeas corpus statute.

1. <u>Limitations Period</u>

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under the one-year limitations period applicable to such petitions. In this regard, the federal habeas corpus laws impose a one-year limitations period applicable to state prisoners. *See* 28 U.S.C. § 2244(d) (as amended).

2. <u>Constitutional Claims</u>

It is well known that a state prisoner may not be granted federal habeas corpus relief unless he demonstrates that he is in custody in violation of the United States Constitution

or federal law. *See* 28 U.S.C. § 2254(a). See also *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.") (internal citations moittes); Cupp v. Naughten, 414 U.S. 141, 146 (1973): Braley v. Shillinger, 902 F.2d 20 10th Cir. 1990). Mere violations of state law or procedural rules cannot provide the basis for federal habeas relief absent a deprivation of constitutional magnitude. *Engle v. Isaac*, 456 U.S. 107, 119 (1982).

3. <u>Exhaustion Requirement</u>

In addition, the provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. *See, e.g.*, *Castille v. Peoples*, 489 U.S. 346, 351 (1989). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts," *Harless*, 459 U.S. at 6. A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted. *See Duncan v. Henry*, 513 U.S.

or federal law. *See* 28 U.S.C. § 2254(a). See also *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.") (internal citations moittes); Cupp v. Naughten, 414 U.S. 141, 146 (1973): Braley v. Shillinger, 902 F.2d 20 10th Cir. 1990). Mere violations of state law or procedural rules cannot provide the basis for federal habeas relief absent a deprivation of constitutional magnitude. *Engle v. Isaac*, 456 U.S. 107, 119 (1982).

3. <u>Exhaustion Requirement</u>

In addition, the provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. *See, e.g.*, *Castille v. Peoples*, 489 U.S. 346, 351 (1989). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts," *Harless*, 459 U.S. at 6. A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted. *See Duncan v. Henry*, 513 U.S.

364, 365-66 (1995) (per curiam). Even if a state court fails to consider the constitutional claim, it is still exhausted as long as the state court had the opportunity to address it.

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellate review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845(1999). A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

4.  Procedural Default

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based on the "independent and adequate state law grounds" doctrine.

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and

6

adequate state ground for denying federal review.
*Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotations and citations omitted).

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision . . . . For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998) (internal quotations and citations omitted). *See also Dugger v. Adams*, 489 U.S. 401, 410, n. 6 (1989) (holding that a state rule is adequate to preclude federal habeas corpus review if it is applied by state courts in "the vast majority of cases.").

Moreover, if a habeas applicant "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred ... there is a procedural default." *Coleman*, 501 U.S. 722 at 735 n.1; *see also Harris v. Reed*, 489 U.S. 255, 269–70 (1989); *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) (" 'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.") (citation omitted).  Thus, if it is obvious that an unexhausted claim would be procedurally barred in state court, the claim is subject to an anticipatory procedural bar and is procedurally barred from federal habeas review.

An applicant whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either:  1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  To demonstrate cause

7

for his procedural default, an applicant must show that some objective factor external to the defense impeded his ability to comply with the relevant procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Salazar*, 323 F.3d 852, 855 (10th Cir. 2003). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [applicant]." *McClesky v. Zant*, 499 U.S. 467, 493–94 (1991) (internal quotation marks omitted). An applicant also must show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.

A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *see also United States v. Cervini*, 379 F.3d 987, 991–92 (10th Cir. 2004). A "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To demonstrate a fundamental miscarriage of justice, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* He further must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

Respondents assert that the Application was timely filed in the instant action. Accordingly, the Court will review Mr. Murphy's claims in light of the prerequisites for habeas corpus relief set forth above.

### C. Analysis

As stated above, this Court may review only claims that have been fairly and properly reviewed by the state courts. Because Applicant's claims in the instant Petition are convoluted and repetitive, the Court will review the claims Applicant presented to the state courts to determine his eligibility for review here.

A.   Petitioner's Direct Appeal

In his direct review, Applicant presented the following three claims.

1.   Whether the trial court erred in denying the challenge for cause given the bias manifested by Juror K.

2.   Whether the trial court erred in submitting the lesser included charge of possession of a schedule II controlled substance, one gram or less to the jury given the defense theory of the case that Defendant was not the dealer.

3.   Whether there was sufficient evidence to convict of possession with intent to distribute a schedule II controlled substance when no evidence was presented that the transaction was consummated.

Applicant's opening brief (direct review) (ECF No. 11-9). He presented all of these claims to the CCA (ECF No. 11-8) and then to the CSC (ECF No. 11-7). All of these claims were reviewed on the merits by the CCA. Thus, these claims have been exhausted and are ripe for review by this Court.[2]

---

[2] The State of Colorado has articulated that review in the Colorado Supreme Court is not part of the standard state appellate review process. More specifically, the Colorado Appellate Rules provide that:

> In all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

Colo. App. R. 51.1. Pursuant to Colo. App. R. 51.1, the Court finds that review in the Colorado Supreme Court is not required to exhaust state remedies if the claim in question was presented fairly to, and relief was denied by, the Colorado Court of Appeals. *See, e.g., Valenzuela v. Medina*,

In his postconviction proceeding, Applicant presented the following claims.

1. Trial Counsel was ineffective for failing to:

    a. investigate the prosecution's evidence;

    b. present alternate defense theories to the jury;

    c. assert the affirmative defense of entrapment;

    d. introduce evidence that would have contradicted the prosecution's theory that the money found in his possession was from the sale of drugs;

    e. introduce evidence that would have showed he did not own or operate the vehicle in which the drugs were found;

    f. obtain exculpatory evidence, including police communications before, during, and after the underlying incident and video surveillance tapes from a Walmart store;

    g. call two police officers who were present during the underlying incident to testify at trial to contradict the prosecution's witness;

    h. "clarify witness testimony" and preclude "negative inferences drawn by the [p]rosecution";

    i. prepare for cross-examination of witnesses; and

    j. object to the prosecution's use of prejudicial statements and hearsay testimony.

2. The prosecution suborned perjured testimony.

3. The prosecution withheld certain evidence he requested.

4. The prosecution made "knowingly untrue, improper statements."

5. The district court improperly allowed the introduction of hearsay evidence.

6. He was entrapped into committing the offense.

7. The affidavit supporting arrest was defective.

---

Civil No. 10-cv-02681-BNB, 2011 WL 805787, at *4 (D. Colo. Feb. 28, 2011).

      8.      The district court erred by denying his motion to suppress certain evidence and his challenge for cause to a prospective juror.

ECF No. 11-4.

In its review of these claims, the CCA determined that, other than the ineffective assistance of counsel claims, the district court properly denied them as successive because the claims were, or could have been, raised on direct appeal in accordance with Colo. R. Crim. P. 35(c)(3)(VI)-(VII) (a court must deny any claim that was, or could have been, raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant). ECF No. 11-4, p. 4. The CCA then proceeded to review Applicant's IAC claims and denied them on the merits. Consequently, Applicant's IAC claims raised in his post-conviction proceeding have been exhausted and are ripe for review by this Court. However, as discussed below, claims two through eight presented to the state courts in his postconviction proceeding have been procedurally defaulted (except his "for-cause" juror challenge, which was exhausted on direct review).

In this regard, the CCA rejected claims two through eight pursuant to an adequate and independent state ground; namely, that they were or could have been raised on direct appeal citing Crim. P. 35(c)(3)(VI)-(VII). Under Rule 35(c)(3)(VI), a postconviction court must deny a claim based on the same facts or legal ground as a claim addressed in an earlier appeal or postconviction proceeding. Under Crim. P. 35(c)(3)(VII), a postconviction court must deny any claim that could have been raised in an earlier appeal.

A petitioner's failure to present his claims to the Colorado state courts in the manner prescribed by Rule 35c constitutes a procedural default for purposes of federal habeas corpus review. *See, e.g., Childs v. Zavaras* 90 F.Supp.2d 1141, 1150 (D. Colo. 1999), *appeal dismissed*, 208. F.3d 225 (10th Cir. 2000), *cert. denied*, 531 U.S. 905 (2000).

Applicant is not entitled to federal habeas review of the merits of his defaulted claims unless he can demonstrate cause for the default and resulting prejudice, or, that the dismissal of his federal habeas petition would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749–50. Petitioner's *pro se* status does not exempt him from these requirements. *Ballinger v. Kerby,* 3 F.3d 1371, 1375 (10th Cir. 1993) (internal citation omitted). To show cause, Applicant must demonstrate that some objective factor external to the defense impeded his efforts to comply with the State's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Applicant filed a Reply in response to the procedural defenses raised in Respondents' Pre-Answer Response. Notwithstanding, he does not offer any explanation for his procedural default. Absent an adequate showing of cause for a procedural default, the court need not reach the issue of prejudice. In addition, Applicant has failed to demonstrate that a fundamental miscarriage of justice will result if the court does not review the merits. The fundamental miscarriage of justice exception applies only in those extraordinary instances "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496; Gilbert v. Scott, 941 F.2d 1065, 1068, n. 1 (10th Cir. 1991). Again, however, Applicant has not alleged facts which would bring him within that narrow exception.

The discussion above indicates that Mr. Murphy has exhausted the IAC claims that he presented in his postconviction motion and his "for-cause" juror challenge claim concerning Juror K. Accordingly, this Court may review the substance of those claims.[3]

---

[3] Respondents assert that Applicant's juror challenge issue does not raise a constitutional claim. Respondents characterize Applicant's claim as pertaining to peremptory challenges and cite case law applicable only to same. *See* Pre-Answer at p. 19-20. Applicant's claim, however, concerns the trial court's denial of a for-cause challenge to Juror K. In this regard, an impartial jury is a fundamental element of the constitutional right to a fair trial. *Burton v. Johnson*, 948 F.2d 1150,

## D. Conclusion

In summary, Respondents do not raise the one-year limitation period as an affirmative defense. The Court finds that claims 1, 2 and 6 (as reorganized by Respondents in their Response) are exhausted. However, claims 3, 4 and 5 are procedurally defaulted. Accordingly,

IT IS HEREBY **ORDERED** that claims 3, 4, and 5 are **DISMISSED** because the claims are procedurally barred.

IT IS FURTHER **ORDERED** that **within thirty days,** Respondents are directed to file an answer that complies with Rule 5 of the Rules Governing Section 2254 Cases that fully addresses the merits of the exhausted claims.

IT IS FURTHER **ORDERED** that within thirty days of the filing of the answer Applicant may file a reply, if he desires.

DATED April 14, 2015.

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge

---

1155 (10th Cir. 1991). Moreover, a defendant's right to an impartial jury is violated if the trial court fails to remove a juror biased against the defendant. Consequently, Applicant's challenge concerning the trial court's failure to have granted his for-cause challenge to Juror K raises a constitutional claim and, in fact, was decided upon fundamental fairness principles by the state court. Thus, this claim has been exhausted and is ripe for review. *Accord Bradley v. Hartley*, Civil No. 09–01343, 2009 WL 2957299 (D. Colo. Sept. 15, 2009).