IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03429-KLM

ANTHONY R. MURPHY,

    Applicant,

v.

MS. PLOUGHE; and
ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## ORDER TO DISMISS

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This case is before this Court pursuant to the Order of Reference entered March 8, 2015, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge [##16, 18][1].

    Applicant, Anthony R. Murphy, a state prisoner in the custody of the Colorado Department of Corrections, currently is incarcerated at a community corrections center in Denver, Colorado. Applicant initiated this action by filing *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, in which he challenges the validity of his conviction and sentence in Jefferson County District Court Case No. 09CR2523.

    On January 6, 2015, Magistrate Judge Gordon P. Gallagher directed Respondents to file a Pre-Answer Response addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A).

---

[1] "[#16]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

Respondents submitted a Pre-Answer Response on February 9, 2015 [#11]. Applicant filed a Reply on March 23, 2015 [#12].

On April 14, 2015, I issued an Order dismissing the Application in part and directing Respondents to file a Response as to the remaining claims. Respondents submitted a Response on May 8, 2015 [#26]. No reply has been filed.

The Court must construe the Application liberally because Applicant is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court does not "assume the role of advocate for the *pro se* litigant." *See Hall*, 935 F.2d at 1110. For the reasons stated below, the Court will dismiss the habeas corpus action.

## I. Relevant Factual and Procedural History

Evidence at trial established that a confidential police informant called a man he knew as "Rick," a drug dealer, and asked to buy cocaine. The dealer told the informant where to meet his deliveryman. The dealer described the deliveryman and the car he would be driving. Applicant, who met the description given by the dealer, arrived at the designated location in a car that matched the dealer's description. The informant entered the car. Before any drugs or money exchanged hands, police surrounded the car and arrested Applicant. Twelve grams of crack cocaine, subdivided into twenty-seven individual packets, were found inside the car in the driver's side door pocket and on the floor in front of the driver's seat. All of the packets appeared to be roughly the same weight.

On March 8, 2010, Applicant proceeded to trial on one charge: possession with intent to distribute a schedule II controlled substance, with a prior conviction. After a two day trial, the jury found Applicant guilty; he later was sentenced to 16 years imprisonment.

Applicant filed a direct appeal to the Colorado Court of Appeals (CCA) raising three claims [#11-5]. The CCA affirmed his conviction in *People v. Murphy,* (Colo. App. No. 10CA1552, May 10, 2012) (unpublished) (Murphy I) [#11-9]. He filed a petition for certiorari in the Colorado Supreme Court (CSC) [#11-7], which was denied by that court on September 17, 2012 [#11-6].

On November 30, 2011, Applicant filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure, which was denied without a hearing. Applicant appealed and on March 13, 2014, the CCA affirmed the lower court. *People v. Murphy* (Colo. App. No. 13CA0233, March 13, 2014) (unpublished) (Murphy II) [#11-4]. Applicant's petition for certiorari was denied by the CSC on November 24, 2014 [#11-2].

Applicant filed the instant action on December 19, 2014 wherein he raised the following claims, as reorganized by Respondents in their Answer.

1. Ineffective assistance of trial counsel (IAC), in that trial counsel failed to obtain or introduce evidence in support of applicant's "alternate theory" that he happened be at the Walmart, and happened to get into the dealer's car after the dealer exited but just before the bust. Such defense evidence included:

    a. evidence that two officers who searched the car and applicant's person did not find drugs;

    b. surveillance tapes of the Walmart parking lot in which the drug transaction took place; and

    c. applicant's bank statements (as evidence of an innocent source of cash found on his person at arrest); and

2. IAC in that counsel failed to object, on hearsay grounds, to unspecified statements by:

    a. the CI who pretended to be the drug buyer; and

    b. at least one detective;

3. Due process violations, in that the prosecution:

   a. knowingly presented false testimony of the CI and officers involved in the bust and subsequent searches;

   b. withheld exculpatory evidence, *e.g.*, Walmart surveillance tapes, recordings of the transaction and officer interactions; and

   c. prosecuted Applicant "maliciously";

4. Fourth amendment violations, in that:

   a. the reliability of the informant providing information for the affidavit for Applicant's warrantless arrest is unknown, as is the source of his or her information;

   b. the affidavit does not describe a specific person and car to be searched, and does not include a nexus between Applicant and the searched car; and

   c. the affidavit contains information known by the affiant to be false;

5. Violations of the Confrontation Clause, via the admission of hearsay from detective Jungclaus, the CI and the dealer; and

6. A due process violation in the court's failure to sustain a for-cause challenge to Juror K.

On April 14, 2015, I dismissed claims 3, 4, and 5 as procedurally barred. I directed Respondents to file an answer on the merits as to Claims 1, 2 and 6. Respondents filed their Answer on May 8, 2015 [#20]. No reply has been filed.

## II. Standard of Review

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a superstate appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [Applicant]

is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the [Applicant's] custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

Specifically, the habeas corpus statute, 28 U.S.C. § 2254(d), provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (*per curiam*).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). A legal principle is "clearly

5

established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See Waddington v. Sarausad*, 555 U.S. 179, 191 (2009).

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

6

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

This deference was explained in *Renico v. Lett*, 599 U.S. 766 (2010) where the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no

violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." § 2254(d)(1).

*Lett*, 559 U.S. at 772-73. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision—or, for that matter, the trial judge's declaration of a mistrial—was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, and in any event—for the reasons we have explained—**whether the trial judge was right or wrong is not the pertinent question under AEDPA**.

*Id.* at 778, n.3 (emphasis added) (internal citation omitted). *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

In making this determination, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have

undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

For federal habeas claims not adjudicated on the merits in state-court proceedings, the Court must exercise its independent judgment. *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001). Any state-court findings of fact that bear upon the claim are entitled to a presumption of correctness rebuttable only by clear and convincing evidence. *Hooks v. Ward*, 184 F.3d 1206, 1223 (10th Cir. 1999) (applying § 2254(e)(1)'s presumption of correctness to state-court factual findings bearing upon the claim, even though the claim was not adjudicated on the merits by the state court).

### III. Ineffective Assistance of Counsel

In claims 1 and 2, Applicant asserts claims of ineffective assistance of counsel. The Sixth Amendment guarantees criminal defendants effective assistance of counsel. The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of the *Strickland* test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. *Id.* at 688. The second prong requires a

defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair and unreliable. *Id.* at 689. A defendant is not entitled to relief unless he makes both showings. *Id.* at 687. Moreover, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 694. The *Strickland* standard applies equally to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2002). Colorado applies the same test for ineffective assistance of counsel as the Strickland test used in federal courts. *See Davis v. People*, 871 P.2d 769, 772-79 (Colo. 1994).

With regard to the first criterion, counsel's effectiveness is measured objectively considering all the circumstances. *Strickland*, 466 U.S. at 687-88. In evaluating counsel's performance, the Court must "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. *Id.* at 689. Thus, counsel's strategic choices will not be second guessed by *post hoc* determinations that a different trial strategy would have fared better. The relevant inquiry is not whether counsel was prudent, appropriate, or perfect; rather, the focus is simply to ensure that the defendant received a fundamentally fair trial. *Id.*

With respect to the second criterion, to establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Prejudice must be evaluated in light of the totality of the evidence presented at trial and a verdict only weakly

supported by the record is more likely to have been affected by errors than one with overwhelming record support.

In analyzing Applicant's claims under the two-part test announced in *Strickland*, this Court must apply the standards set forth in 28 U.S.C. § 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under *Strickland* is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies. *Bryan v. Mullin*, 335 F.3d 1207, 1221 n.17 (10th Cir. 2003). Likewise, a state court's determination that a decision was a tactical one is a question of fact. *Id*.

The Supreme Court recently reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review.

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotations and citations omitted).

The Court further instructed:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging

11

> counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  **When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.**

*Harrington*, 562 U.S. at 105 (internal quotations and citations omitted) (emphasis added).

In his first ineffective assistance claim, Applicant asserts that trial counsel failed to obtain or introduce evidence in support of applicant's "alternate theory" that he happened be at the Walmart, and happened to get into the dealer's car after the dealer exited but just before the bust.  Such defense evidence included:

    a.    evidence that two officers who searched the car and Applicant's person did not find drugs;

    b.    surveillance tapes of the Walmart parking lot in which the drug transaction took place; and

    c.    Applicant's bank statements (as evidence of an innocent source of cash found on his person at arrest).

In addition, he claimed that his counsel rendered ineffective assistance by failing to object, on hearsay grounds, to statements by:

    a.    the CI who pretended to be the drug buyer; and

    b.    at least one detective.

In its review of this claim, the CCA made the following determination with respect to these claims.

> Defendant's motion alleged that trial counsel had failed to: (1) investigate the prosecution's evidence; (2) present alternate defense theories to the jury; (3) assert the affirmative defense of entrapment; (4) introduce evidence that would have contradicted the prosecution's theory that the money found in his possession was from the sale of drugs; (5) introduce evidence that would have showed he did not own or operate the vehicle in which the drugs were found; (6) obtain exculpatory evidence, including police communications before, during, and after the underlying incident and video surveillance tapes from a Walmart store; (7) call two police officers who were present during the underlying incident to testify at trial to contradict the prosecution's witness; (8) "clarify witness testimony" and preclude "negative inferences drawn by the [p]rosecution"; (9) prepare for cross-examination of witnesses; and (10) object to the prosecution's use of prejudicial statements and hearsay testimony.
>
> First, the substance of defendant's arguments relates to counsel's strategic or tactical trial decisions. *See Arko v. People*, 183 P.3d 555, 558 (Colo. 2008) ("Examples of ... strategic decisions include 'what witnesses to call . . ., whether and how to conduct cross-examination, what jurors to accept or strike, and what trial motions to make.'" (quoting *People v. Curtis*, 681 P.2d 504, 511 (Colo. 1984))). Defense counsel has final authority to make decisions that are strategic or tactical in nature even if his client disagrees. *Id.*; *see Steward v. People*, 179 Colo. 31, 34, 498 P.2d 933, 934 (1972) ("Defense counsel stands as captain of the ship in ascertaining what evidence should be offered and what strategy should be employed in the defense of the case."). "[J]udicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the trial, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Ardolino*, 69 P.3d at 76.
>
> We are not persuaded that defendant's assertions of counsel's allegedly deficient strategic or tactical trial decisions were sufficient to warrant relief. *See id.* ("Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").
>
> Moreover, we agree with the district court that defendant's ineffective assistance of counsel claim was supported only by bare, conclusory assertions. *See People v. Osorio*, 170 P.3d 796, 799 (Colo. App. 2007) ("A

> trial court may . . . deny relief where the allegations of counsel's deficient performance are merely conclusory, vague, or lacking in detail."); *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005) (a Crim. P. 35(c) motion may be denied without a hearing where "the claims are bare and conclusory in nature, and lack supporting factual allegations"). Defendant did not indicate ( 1) the evidence or defense theories counsel should have investigated and presented; (2) the evidence that counsel should have presented to prove he had been entrapped; (3) how counsel's failure to introduce evidence regarding the origin of the money in his possession or his ownership and operation of the vehicle would have been relevant to his defense; (4) the exculpatory evidence that counsel would have uncovered in the police communications or surveillance tapes; (5) the testimony that counsel would have elicited from the police officers to contradict the prosecution's witnesses; (6) the testimony that counsel needed to clarify; (7) the cross-examination for which counsel was unprepared; or (8) the prejudicial statements and hearsay testimony to which counsel had failed to object. See Osorio, 170 P.3d at 800 ("Other than a bare assertion of errors, no detail is provided to explain why these actions [of trial counsel] were deficient or to place them in context.  For example, [the] defendant does not reveal what the cross-examination of any witnesses would have revealed.").
>
> Also, defendant did not explain why, in the absence of counsel's allegedly deficient performance, the result of the proceeding would have been different.  *See People v. Gandiaga*, 70 P.3d 523, 526 (Colo. App. 2002) ("[I]f a court determines that a defendant failed to affirmatively demonstrate prejudice, it may resolve [an ineffective assistance of counsel] claim on that basis alone.").   Instead, he baldly asserted that, but for counsel's deficiencies, he would have been "exonerated."
>
> In his opening brief, defendant appears to expand on the arguments made in support of his ineffective assistance of counsel claim.  However, we will not address issues not raised in the district court.  *See People v. Salazar*, 964 P.2d 502, 507 (Colo. 1998).

[#11-4] at 6-10.

Here, the Colorado Court of Appeals' determinations as to Applicant's ineffective assistance of counsel claims are not an unreasonable application of the *Strickland* standard.  Specifically, in *Strickland*, the Supreme Court has instructed that:

> . . . [a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions

14

were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

. . .

. . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-691.

As noted by the Colorado Court, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

On direct appeal, the Colorado Court of Appeals (CCA) summarized the evidence supporting applicant's conviction for possession of controlled substance (cocaine) with intent to distribute as follows:

Evidence at trial established that a confidential police informant called a man he knew as a drug dealer and asked to buy cocaine. The dealer told the informant where to meet his deliveryman. He described that person and the car he would be driving.

Defendant, who met the description given by the dealer, arrived at the designated location in a car that matched the dealer's description. The informant entered the car. Before any drugs or money exchanged hands, police surrounded the car and arrested defendant. Twelve grams of crack

15

> cocaine, subdivided into twenty-seven individual packets, were found inside the car near the driver's seat.

[#11-8] at 3.  Simply stated, none of Applicant's allegations of ineffectiveness refute this evidence, which is more than sufficient to sustain his conviction for possession with intent to distribute.

Moreover, the failure to argue an entrapment defense did not constitute ineffective assistance.  Colo. Rev. Stat. § 18-1-709 Entrapment, provides as follows.

> The commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain that evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced.

Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used.  *People v. Jackson*, 627 P.2d 741, 745 (Colo. 1981).  In other words, the plain wording of the statute indicates that the defense of entrapment cannot be established in those cases where the police merely furnish the defendant with an opportunity to commit a crime.  *Id.*  The defense of entrapment is available only where the defendant shows that law enforcement agents, in fact, induce, instigate, and cause a criminal offense to be committed.  *Id.*

Here, the evidence showed that Applicant met the description given by his dealer, arrived at the designated location in a car that matched the dealer's description, with a substantial amount of cocaine in the car.  The simple fact that Applicant was not the targeted dealer named "Rick" does not support an entrapment defense. Moreover, this fact

was presented to the jury. Accordingly, his counsel did not render ineffective assistance for failing to argue an entrapment defense.

After reviewing the record, the Court finds that the Colorado Court of Appeals applied the appropriate factors and did not reach an unreasonable conclusion. Accordingly, the conclusion of the Colorado Court of Appeals that trial counsel did not render ineffective assistance is not an unreasonable application of Supreme Court precedent, nor an unreasonable determination in light of the facts presented. Therefore, Applicant is not entitled to habeas relief on his ineffective assistance of counsel claims.

## IV. Juror Challenge

Applicant's final claim alleges a due process violation in the court's failure to have sustained a for-cause challenge to Juror K. Specifically, Applicant argues that his constitutional rights were violated when the trial court erroneously refused to excuse Juror K for cause and he was required to exhaust his peremptory challenges by using one to excuse Juror K.

The Supreme Court squarely addressed this issue in *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000) where it held that, although peremptory challenges are "auxiliary" to the right to a fair trial, they are not themselves "of federal constitutional dimension." Thus, the Court held that a defendant's use of a peremptory challenge to remove a juror he claimed should have been removed for cause does not give rise to a federal constitutional violation. *Id. See also Rivera v. Illinois*, 556 U.S. 148 (2009) ("Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution.").

In Applicant's trial, no member of the jury as finally composed was removable for cause. Thus, there was no violation of Applicant's Sixth Amendment right to an impartial jury or his Fourteenth Amendment right to due process. That he might have used the peremptory strike used against Juror K against some other juror does not raise a constitutional matter. Therefore, Applicant is not entitled to federal habeas relief on this claim.

## V. Conclusion

Accordingly,

IT IS HEREBY **ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [#1] filed by Applicant, Anthony R. Murphy, is **DENIED**.

IT IS FURTHER **ORDERED** that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.

IT IS FURTHER **ORDERED** that this case is **DISMISSED with prejudice**.

Dated: August 17, 2015

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge